IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-74

 No. 344A20

 Filed 18 June 2021

 IN THE MATTER OF: J.E.E.R.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 16

 March 2020 by Judge William B. Davis in District Court, Guilford County. This

 matter was calendared for argument in the Supreme Court on 22 April 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Mercedes O. Chut for petitioner-appellee Guilford County Department of Health
 and Human Services.

 Ward and Smith, P.A., by Mary V. Cavanagh for appellee Guardian ad litem.

 Robert W. Ewing for respondent-appellant father.

 BARRINGER, Justice.

¶1 Respondent, the biological father of J.E.E.R. (Jane),1 appeals from the trial

 court’s order terminating his parental rights pursuant to N.C.G.S. § 7B-

 1111(a)(2)−(3), and (7) (2019). Since we find that the trial court’s findings of fact

 supporting its termination of respondent’s parental rights pursuant to N.C.G.S. § 7B-

 1111(a)(3) are supported by clear, cogent, and convincing evidence, we affirm.

 1 A pseudonym is used to protect the identity of the juvenile and for ease of reading.
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

 I. Factual and Procedural Background

¶2 Jane was born in 2006. On 8 May 2017, Guilford County Department of Health

 and Human Services (DHHS) obtained nonsecure custody of Jane and her three

 siblings2 and filed a petition alleging Jane to be an abused and neglected juvenile. At

 that time, DHHS did not have knowledge of respondent’s location or contact

 information. DHHS’s petition alleged that on 3 May 2017, it received a report of

 physical abuse after Jane’s brother arrived at school with black eyes and swelling on

 the left side of his face. After each sibling was interviewed, Jane’s brother and sister

 disclosed that they sustained injuries from their mother and stepfather. Jane denied

 being physically disciplined during the current school year “but disclosed that she has

 had marks in the past from being physically disciplined.” Jane reported that her

 mother and stepfather disciplined the children using their hands and objects, such as

 a toy ukulele and extension cords.

¶3 Subsequently, DHHS located respondent in New York. Respondent is listed as

 the father on Jane’s birth certificate. On 27 June 2017, respondent submitted to

 genetic paternity testing that determined he was Jane’s biological father. In an order

 entered 4 August 2017, the trial court adjudicated Jane to be a neglected juvenile.

 The trial court ordered respondent to cooperate with an Interstate Compact on the

 Placement of Children (ICPC) home study, enter a case plan, and cooperate with

 2 Jane’s siblings are not the subjects of this appeal.
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

 DHHS.3 The trial court authorized DHHS to allow supervised telephone calls

 between respondent and Jane for a minimum of one hour per week.

¶4 Following a permanency-planning hearing on 25 October 2017, the trial court

 found that respondent had spoken with Jane by telephone, supervised by her foster

 parents. Although respondent had been in contact with a DHHS social worker and

 was cooperative he had not yet entered into a case plan. Respondent reported to a

 social worker and the trial court that he was planning on moving in with his sister in

 New York and wanted a home study completed on his sister’s home. The trial court

 set the permanent plan for Jane as reunification with respondent, with a concurrent

 plan of adoption. The trial court continued to allow supervised telephone calls

 between respondent and Jane.

¶5 Subsequently, the New York Office of Children & Family Services, through an

 ICPC request, completed a home study of respondent’s sister’s apartment. By a report

 dated 1 May 2018, the New York Office of Children & Family Services disapproved

 of the placement in respondent’s sister’s home. On 24 May 2018, respondent

 contacted DHHS and requested that a home study be completed on his mother’s

 home. The home study on his mother’s home was conducted and denied.

 3 The result of respondent’s genetic paternity testing was pending at the time of the

 adjudication hearing. The trial court’s order that respondent cooperate with an ICPC home
 study, enter into a case plan, and cooperate with DHHS was contingent upon confirmation of
 respondent’s paternity.
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

¶6 In a permanency-planning hearing on 1 August 2018, the trial court found that

 respondent was not working towards reunification. Respondent had been hostile with

 a DHHS social worker, and in December 2017, requested that the social worker no

 longer contact him. On 6 March 2018, respondent contacted a social worker and

 stated that he wanted Jane to call him the following day, Jane’s birthday. Jane called

 respondent as requested, but respondent did not answer. Jane left a voice mail, but

 he never returned her phone call. The trial court further found that a DHHS social

 worker sent respondent a proposed case plan on 31 May 2018 and asked respondent

 to contact the social worker if he wished to enter into the plan. Despite acknowledging

 receipt of the proposed case plan on 6 June 2018, respondent did not enter into a case

 plan with DHHS. The trial court concluded that DHHS should cease reunification

 efforts with respondent and changed the permanent plan to adoption with a

 concurrent plan of guardianship. DHHS was ordered to proceed with filing for

 termination of parental rights within sixty days of the entry of the order.

¶7 On 3 October 2018, DHHS filed a petition to terminate respondent’s parental

 rights to Jane. DHHS alleged grounds for termination pursuant to N.C.G.S. § 7B-

 1111(a)(1)−(3) and (7). Following a hearing on 1 October 2019, at which respondent

 did not appear, the trial court entered an order on 31 October 2019 concluding that

 grounds existed to terminate respondent’s parental rights in Jane pursuant to

 N.C.G.S. § 7B-1111(a)(1)–(3) and (7). The trial court then determined that it was in
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

 Jane’s best interests that respondent’s parental rights be terminated, and it

 terminated his parental rights. See N.C.G.S. § 7B-1110(a) (2019).

¶8 On 11 October 2019, respondent filed a “Motion to Re-Appoint Counsel, Motion

 to Re-Open the Evidence, and Motion for a New Trial.” The trial court entered an

 order on 27 January 2020 granting respondent’s motion for a new trial because of

 concerns that respondent lacked proper notice of the first hearing and without

 objection from any party. The 31 October 2019 order terminating respondent’s

 parental rights was “stricken and set aside.”

¶9 Following a termination-of-parental-rights hearing on 18 February 2020,

 which respondent was present for and participated in, the trial court entered an order

 on 16 March 2020 concluding that grounds existed to terminate respondent’s parental

 rights pursuant to N.C.G.S. § 7B-1111(a)(2)–(3), and (7) and determining that it was

 in Jane’s best interests that respondent’s parental rights be terminated. See N.C.G.S.

 § 7B-1110(a). Respondent appealed.

 II. Standard of Review

¶ 10 Our Juvenile Code provides for a two-step process for the termination of

 parental rights—an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-

 1109, 1110 (2019). At the adjudicatory stage, the petitioner bears the burden of

 proving by clear, cogent, and convincing evidence the existence of one or more grounds

 for termination under N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(e), (f). If the trial
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

 court finds the existence of one or more grounds to terminate the respondent’s

 parental rights, the matter proceeds to the dispositional stage where the trial court

 must determine whether terminating the parent’s rights is in the juvenile’s best

 interests. N.C.G.S. § 7B-1110(a).

¶ 11 We review a trial court’s adjudication under N.C.G.S. § 7B-1111 “to determine

 whether the findings are supported by clear, cogent and convincing evidence and the

 findings support the conclusions of law.” In re Montgomery, 311 N.C. 101, 111 (1984).

 “The trial court’s conclusions of law are reviewable de novo on appeal.” In re C.B.C.,

 373 N.C. 16, 19 (2019). Unchallenged findings are deemed to be supported by the

 evidence and are binding on appeal. In re Z.L.W., 372 N.C. 432, 437 (2019).

 III. Analysis

¶ 12 On appeal, respondent challenges the trial court’s determination that grounds

 existed to terminate his parental rights. Specifically, respondent argues that the

 findings of fact supporting the trial court’s grounds for termination pursuant to

 N.C.G.S. § 7B-1111(a)(3), and (7) were not supported by clear, cogent, and convincing

 evidence. Respondent also argues that because the trial court found that respondent

 had not neglected Jane pursuant to N.C.G.S. § 7B-1111(a)(1), the trial court was

 precluded from terminating his parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).

 A. Termination of Respondent’s Parental Rights Pursuant to N.C.G.S. § 7B-
 1111(a)(3)

¶ 13 N.C.G.S. § 7B-1111(a)(3) states, in relevant part:
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

 (a) The court may terminate the parental rights upon a
 finding of one or more of the following:

 ....

 (3) The juvenile has been placed in the custody of a county
 department of social services . . . and the parent has for a
 continuous period of six months immediately preceding the
 filing of the petition or motion willfully failed to pay a
 reasonable portion of the cost of care for the juvenile
 although physically and financially able to do so.

¶ 14 The “ ‘cost of care’ refers to the amount it costs the Department of Social

 Services to care for the child, namely, foster care.” In re Montgomery, 311 N.C. at 113.

 “A parent is required to pay that portion of the cost of foster care for the child that is

 fair, just and equitable based upon the parent’s ability or means to pay. . . . The

 requirement applies irrespective of the parent’s wealth or poverty.” In re Clark, 303

 N.C. 592, 604 (1981).

¶ 15 The trial court made the following findings of fact, in pertinent part, to support

 its termination of respondent’s parental rights pursuant to N.C.G.S. § 7B-1111(a)(3):

 2. [Jane] has been in the legal and physical custody of
 [DHHS] a consolidated county human services agency,
 pursuant to Court Order continuously since May 8, 2017.

 ....

 5. The Petition to Terminate Parental Rights in this
 matter was filed on October 3, 2018. . . . The six-month
 period applicable to the (a)(3) and (a)(7) claim is April 3,
 2018 through October 3, 2018.

 ....
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

[10]b. Income – [Respondent] was to obtain and maintain
suitable employment and provide proof of income.
[Respondent] indicated that he was employed at A&J
Grocery at the beginning of 2018 until approximately the
fall/winter of 2019. [Respondent] indicated that this
employer did not provide paystubs, and that he was being
paid under the table four to five days per week, at a
payment of approximately $200.00 to $300.00 per week. In
the winter of 2018 until the present, [respondent] indicates
by his own testimony that he is employed with Postmates
delivery service. He schedules his own hours and brings
home anywhere between $300.00 to $800.00 per week by
direct deposit to his pre-paid card. He also indicated that
he has some additional entrepreneurial activities but has
given no indication of whether those resulted in any
income, and if so, what amounts. As of today’s hearing
[respondent] has not provided any proof of income. . . .

....

17. . . .

 a. [DHHS] has incurred cost in connection with the
 care of [Jane] on a continuous basis in the six months
 preceding the filing of this Petition, namely from April
 2018 through October 2018 amounting to $6,158.46.

 b. [Respondent] has not provided any type or amount
 of financial support for [Jane] within the six months
 immediately preceding the filing of this Petition
 though he stated to [DHHS] he was working. He
 agreed to provide verification of his income but has
 failed to do so.

 c. [Respondent] has never provided any
 documentation verifying he is unable to work due to a
 disability and agreed to provide proof of income.
 [Respondent] has reported that he is employed and has
 been since 2018. This demonstrates that [respondent]
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

 has sufficient resources to pay some amount greater
 than zero.

¶ 16 Respondent does not dispute the trial court’s finding of fact that he “has not

 provided any type or amount of financial support for [Jane] within the six months

 immediately preceding the filing of this Petition though he stated to [DHHS] he was

 working.” Rather, he argues the trial court’s finding of fact that respondent had

 sufficient resources to pay some amount of financial support greater than zero is not

 supported by the evidence. Specifically, respondent contends the trial court erred in

 determining that he had the ability to pay for Jane’s cost of care because he was

 unable to support himself on the income he was receiving.

¶ 17 Here, the relevant six-month time period was 3 April 2018 to 3 October 2018.

 Respondent testified that he was employed at A&J Grocery from the beginning of

 2018 until “[s]omewhere in the fall, going into winter” of 2018 and made between

 $200.00 and $700.00 per week. At the end of 2018 “going into [20]19,” he began

 working at Postmates delivery service, earning between $300.00 and $800.00 per

 week. He also testified that he was never unemployed between the job at A&J Grocery

 and Postmates. Therefore, the trial court’s findings that respondent was employed

 during the relevant time period with some income is supported by clear, cogent, and

 convincing evidence. See, e.g., In re T.D.P., 164 N.C. App. 287, 290 (2004) (holding

 there was clear and convincing evidence the respondent had an ability to pay an

 amount greater than zero where he was earning $0.40 to $1.00 per day while
 IN RE J.E.E.R.

 2021-NCSC-74

 Opinion of the Court

 incarcerated), aff’d, 359 N.C. 405 (2005).

¶ 18 As this Court held in In re J.A.E.W., 375 N.C. 112, 118 (2020), where the trial

 court finds that the respondent has made no contributions to the juvenile’s care for

 the period of six months immediately preceding the filing of the petition and that the

 respondent had income during this period, the trial court properly terminates

 respondent’s rights based on N.C.G.S. § 7B-1111(a)(3) for willful failure to pay a

 reasonable portion of the costs of care for the juvenile although physically and

 financially able to do so. Therefore, the trial court properly terminated respondent’s

 parental rights in Jane pursuant to N.C.G.S. § 7B-1111(a)(3).

 IV. Conclusion

¶ 19 Since only one ground is necessary to support a termination of parental rights,

 we decline to address respondent’s arguments challenging the trial court’s finding

 that grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(2)

 and (7). See N.C.G.S. § 7B-1111(a). Respondent does not challenge the trial court’s

 determination that it was in Jane’s best interests to terminate his parental rights.

 Accordingly, we affirm the trial court’s order.

 AFFIRMED.